UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| NELSON R. AYBAR, | ) | CASE NO. 4:08 CV0286 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| JOSEPH E. GUNJA, WARDEN | ) | |
| | ) | |
| Respondent. | ) | |

*Pro se* petitioner Nelson R. Aybar filed a petition pursuant to 28 U.S.C. § 2241 to "Invalidate a Prison Disciplinary Conviction Obtained in violation of the Due Process Clause of the United States Constitution." Petitioner, who is incarcerated at the Northeast Ohio Correctional Center (N.E.O.C.C.), filed this action against the Warden at N.E.O.C.C. seeking to set aside an incident report issued on November 6, 2007.

*Background*

Around the middle of September 2007, a counselor at N.E.O.C.C., N. Teasley, allegedly "threatened" to throw all of Mr. Aybar's legal materials into the hallway during an encounter in the Recreation Office. Several days later, her "demands" continued. It was then that she escorted Mr. Aybar to the Unit Manager's Office and repeated her demand that he mail all of

his legal materials out of N.E.O.C.C. The Unit Manager, Omaira Arvelo, agreed and made the same demand to the petitioner "in an unprofessional manner." Mr. Aybar refused to comply with their demands stating that "several U.S. Supreme Court's constitutional decisions entitled him to be in possession of his legal material due to 4-pending litigations in federal courts and his legal research concerning [sic] with his future status as a legal resident in this country." (Pet. at 3.) After he was told he was not allowed to have these materials at N.E.O.C.C., Mr. Aybar demanded the immediate return of all legal material stored in Ms. Teasley's office. He attaches three separate Inmate Request to Staff Member forms to his petition, dated September 19, 20 and 21, 2007, wherein he demanded Counselor Teasley return his legal material.

It is not clear whether Ms. Teasely complied with petitioner's request, but he does allege that the Chief of Unit Management, R. Rubosky, and Ms. Teasley came to his room "with the same litany" on October 10, 2007. In response, Mr. Aybar "invited Ms. Rubusky to confiscate his legal materials," but advised her that "she has the obligation to talk to him in a respectful manner." (Pet. at 4.) Their exchange was interrupted by a general announcement from the warden.

On November 2, 2007, Ms. Rubosky and another unit manager, Ms. Delgado, "came to Petitioner's room with the same litany." It was at that time that Ms. Rubosky ordered him to store his legal materials in a gray box. In response, Mr. Aybar commented: "Amazing, Petitioner is not a wizard to create out of nothing a gray box because he does not has [sic] such gray box!" (Pet. at 4.) He believes Ms. Rubosky became irritated when she realized "the consistent of her inconsistent" and when she "changed for [sic] talking to barking . . . Petitioner refused to hear her anymore." (Pet. at 4.) He was accused of refusing a 'direct order' and being unsanitary or untidy. Pending a hearing for violating a BOP regulation, petitioner was placed in the segregation unit (SHU). The following

-2-

day he was interviewed by the shift supervisor, Capt. Perdue, who abruptly ended their session when petitioner stated it was impossible to comply with Ms. Rubosky's direct order.

An incident report was prepared and delivered to Mr. Aybar on November 2, 2007. A Unit Disciplinary Committee (UDC) hearing was held on November 6, 2007. Ms. Teasley reported that Ms. Rubosky was conducting a walk through of petitioner's area when she gave several direct orders for him to place his legal materials in the gray box provided to him. After interrupting her several times, and still refusing to comply with her order, Mr. Aybar was taken to the sallyport. (Pet.'s Ex. H-13.) Mr. Aybar's stated response was that he did not have a gray box within which to place his materials and he regularly cleaned his room. He added that he needed all of his legal materials which pertain to four pending cases on appeal. The UDC Chairman found Mr. Aybar guilty on November 6, 2007 of disobeying a direct order and being unsanitary or untidy for reasons set forth in sections 11 and 24 of the report.[1] He was sanctioned with the 30 days loss of telephone and commissary privileges. Following his release from SHU on November 13, 2007, petitioner filed a grievance two days later. His grievance was against Ms. Rubosky for her unprofessional conduct. Both his request and appeal were denied.

On November 16, 2007, Mr. Aybar submitted "an appeal" seeking to invalidate his incident report. After a follow up inquiry with the grievance officer, petitioner was advised that the appeal could not be located and he resubmitted it on January 2, 2008.[2] The warden denied his

---

[1] The court notes that "section 24" is not attached to the copy of the incident report provided by petitioner.

[2] In a response dated January 4, 2008, the Warden advised Mr. Aybar that the issue he was raising had already been reviewed and denied on appeal: "Thus, this appeal is moot." (Pet.'s Ex. H-7, N.E.O.C.C. Warden Letter of 1/4/08 to Aybar.) He also documented that on December 19, 2007
(continued...)

-3-

request two days later explaining that his claims regarding his incident report and those against Ms. Rubosky were the same issue. Petitioner appealed this decision to the BOP which "rejected" his claim stating that his grievance against Ms. Rubosky and the UDC decision were not appealable to the BOP. He now seeks an order from this court invalidating Incident Report (IR) 1663071 based on a violation of his rights under the Due Process Clause.

*Analysis*

Mr. Aybar contends that the entire UDC determination was a "sham" because it was impossible for him to comply with the direct order given by Ms. Rubosky. Citing *Mooney v. Holohan*, 294 U.S. 103 (1935), he argues that due process is not satisfied if the UDC reaches its decision based on evidence that was "submitted by deliberate deception and by the presentation of statement [sic] known to be perjured."[3] (Pet. at 8.) He quotes a Second Circuit opinion to illustrate that a sentence can be invalid if it is based on misinformation or a "misunderstanding that is materially untrue." *United States v. Malcolm*, 432 F. 2d 809, 816 (2nd Cir. 1970)(quoting *Townsend v. Burke*, 334 U.S. 736, 740-41)).

---

[2](...continued)
Mr. Aybar signed and acknowledged that his appeal of November 16, 2007 was denied on November 28, 2007. Another acknowledgment of receipt of the denial was presented to Mr. Aybar, who signed it on December 26, 2007. Copies of this information were provided by the warden to Mr. Aybar as an attachment to his response of January 4, 2008.

[3] In *Mooney,* the petitioner was convicted of murder in state court and claimed he was deprived of liberty without due process by the prosecuting officers' allegedly deliberate use of perjured testimony. Mr. Aybar's issue involves a prison disciplinary proceeding which is civil in nature, not criminal. *Tinch v. Henderson*, 430 F. Supp. 964, 968 (D.C.Tenn. 1977). The requirements of procedural due process are considerably greater in the context of criminal proceedings than they are in civil proceedings. *See e.g. Herrada v. City of Detroit*, 275 F.3d 553 (6th Cir. 2001). Therefore, petitioner's references to *Mooney* and *United States v. Malcolm*, 432 F. 2d 809, 816 (2d Cir. 1970), which both involved due process with regard to criminal convictions, are inapposite.

*28 U.S.C. § 2241*

Courts have uniformly held that claims asserted by federal prisoners seeking to challenge the execution or manner in which a sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991)); *Wright v. United States Bd. of Parole*, 557 F.2d 74, 77 (6th Cir.1977). Here, the petitioner has properly filed his request for habeas relief in this court, as it has personal jurisdiction over his custodian. The substance of his petition fails, however, as a matter of law.

*Process Due - Disciplinary Hearings*

A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir.1993). A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Prison sanctions which impose the forfeiture of Good Credit Time (GCT) will inevitably affect the duration of a prisoner's sentence. It is under those circumstance that a prisoner is entitled to the protections of procedural due process before he may be deprived of those sentence credits. *Id.* at 482-84. A prisoner must therefore possess a legally protected interest in the subject matter at issue before he is entitled to the protections of due process.

The record supports that petitioner received all the process he was due in connection with the disciplinary charges brought against him and with regard to the disciplinary hearing held.

Addressing each of his sanctions, first, the petitioner had no liberty interests relative to his telephone or commissary privileges and, therefore, no constitutional deprivations are implicated as a result of his temporary loss of those privileges. Second, there is no liberty interest in remaining free from administrative or disciplinary segregation. *See Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir.2003); *Singleton v. Patton*, No. 07-CV-69-HRW, 2007 WL 2228558, at *3 (E.D.Ky. July 30, 2007). Thus, any failure to provide the due process protections described in *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974) does not afford any basis for relief.[4]

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[5]

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A.GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 6/3/08

---

[4] When a prisoner faces the loss of good time credits, due process requires that he or she receive the following hearing rights: 1) written notice of the hearing at least twenty-four hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *Wolff*, 418 U.S. at 563-67.

[5] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.